GENERAL ICE CREAM CORPORATION *vs.* MYER LIPPA.

JUNE 26, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

FLYNN, C. J. This case is before us on the plaintiff's exception to a decision for the defendant by a justice of the superior court sitting without a jury in an action of trespass on the case for deceit upon false warranties.

The defendant and one Clement Greenwood entered into an oral partnership agreement, and as partners conducted a roadside stand under the name of the Greenwood Ice Cream Company in South Attleboro, Massachusetts. From the testimony of Greenwood, who was the only partner to testify, it seems that he was to attend the stand, while Lippa, who "was supposed to be the front man," took charge of the financial matters of the partnership. The plaintiff and the Landy Ice Cream Company are competitors in the wholesale ice cream business. In April, 1932, the Landy Ice Cream Company sold two ice cream cabinets to the partnership for $666.49, on open account and without security of any kind, and thereafter supplied ice cream that was used at the stand in South Attleboro, also on an open account. All payments on both these accounts were made with the personal checks of the defendant, drawn on an account, in his name, in which the partnership receipts were deposited. On June 27, 1932, the partnership owed the Landy Ice Cream Company a combined balance of $387.17.

In the meanwhile, the plaintiff was trying to get the business of supplying the ice cream for the stand, and on a few occasions it had actually made deliveries there, because, according to Greenwood, the General Ice Cream Corporation gave twenty-four hour service and the Landy Ice Cream Company did not. A few days before June 27, 1932, the plaintiff's salesman, who testified that the defendant said he owned the business there, introduced the defendant to the plaintiff's local manager, to discuss possible business arrangements. At this meeting, the defendant requested a loan of $450 from the plaintiff. In answer to a question as to "what he had for security," he stated that he owned the two ice cream cabinets in the South Attleboro

stand, whereupon the manager asked to see a bill of sale. Two days later, June 29, the defendant again met the manager and showed him a receipted account, on the stationery of the Landy Ice Cream Company, covering the cabinets and ice cream, and made out to the defendant, personally, at his request. At the bottom of it were these words: "In consideration of two checks dated 7-5—7-18 received June 27th, the above account is paid in full. W. C. Landy."

The meeting of June 29 resulted in the loan of $450 to the defendant and the execution on that day of three instruments between the parties, the partnership not being mentioned therein as such. The first was a bill of sale of the two ice cream cabinets from the defendant to the plaintiff, containing the usual covenants of ownership, right to convey, against encumbrances, and of warranty. The second, entitled: "Agreement to be Entered into by Customers to whom Equipment is Sold," bound the plaintiff to convey the same cabinets to the defendant, and bound him to purchase them, for the sum of $450, to be paid within a year, with provisions for the payment and crediting thereon of "a surcharge equal to 10 cents per gallon of ice cream purchased by him" and for the crediting thereon of such trade discounts and allowances as he might be entitled to receive from the plaintiff from time to time. The third instrument, which is designated as "Dealer's Agreement to Purchase," set out that, in consideration of the sale of such equipment, the defendant "will purchase and use exclusively and to the full requirements of his business in the City of Attleboro, the ice cream . . . sold or dealt in" by the plaintiff. Greenwood testified that at the time he had no knowledge of this transaction and never consented to it.

Of the two checks that the defendant gave to the Landy Ice Cream Company on June 27, for its receipted bill to him for the cabinets and ice cream open accounts due from the Greenwood Ice Cream Company; the first one, dated July 5, for $200, was duly paid; the second one, dated July 18 for

$186, was dishonored for insufficient funds. On July 7, 1932, the defendant and Greenwood dissolved partnership, the latter continuing in possession of the stand and cabinets in South Attleboro. When the defendant's check of July 18 was not paid, the Landy Ice Cream Company induced Greenwood to transfer the smaller of the two cabinets in settlement of its claim. The plaintiff later demanded the cabinets from the Landy Ice Cream Company and Greenwood respectively, and, upon their refusal, it brought an action of trover and conversion against each of them.

These two actions were subsequently compromised. The Landy Ice Cream Company received $75 from the plaintiff and gave up the smaller cabinet, the fair value of which was fixed in the testimony at $175; Greenwood paid the plaintiff $50 and kept possession of the other cabinet. The $50, which Greenwood paid, and $100, which was the difference between the $75 that the plaintiff paid to the Landy Ice Cream Company and the fair value of the smaller cabinet, were credited by the plaintiff on the $450 that the defendant received in the transaction of June 29. This left a balance of $300 on that account, which the plaintiff seeks to recover from the defendant in the instant suit.

In the single count of the declaration the plaintiff nowhere alleged a loan of $450 to the defendant, induced by his deceit, but described the transaction as a sale by him of the cabinets for $450, and alleged a breach by him of the covenants of ownership, of right to convey and of warranty, contained in his bill of sale. The defendant pleaded the general issue and a special plea of *res adjudicata*, setting out the action in trover that the plaintiff had brought against and settled with the Landy Ice Cream Company. While no question of pleading or variance between the declaration and the proof has been brought before us, we wish to point out the unsatisfactory condition of the record in these respects, when the case was tried on its merits.

In seeking to prove its case before the trial justice, the plaintiff was uncertain and inconsistent, both as to the nature of the basic transaction and as to the legal principles that it deemed applicable. No evidence was presented in behalf of the defendant. The testimony, however, is not at all consistent and lends itself to different and conflicting inferences, which make it extremely difficult to determine with any degree of certainty the real basis of the decision of the trial justice. He decided the case in the following words: "Well, it seems to me that this Lippa pledged that property to get money to pay the debts of this partnership. Under the authorities I have seen, he has a right to do that, and of course the person to whom he pledges that is not bound to see to the application of the money loaned. I am going to give decision for the defendant."

From this language it is fairly arguable that he based his decision on the reasoning that, even if induced by the defendant's deceit to make the loan, the plaintiff could not maintain its action because the pledge of the cabinets as security for a loan of money to the defendant to pay partnership debts was enforceable against the partnership as well as against the defendant, and therefore the security received by the plaintiff was legally just as good as it would have been if the defendant's alleged false statement, that he was the owner of them, had been true, and therefore it suffered no injury by reason of said statement. This reasoning, if correct and proper under the pleadings and evidence, would involve the application of a rule of damages and would raise the further question of whether the correct rule to be applied is the same in the case of a loan, induced by borrower's deceit, as that applied in the case of a purchase of property, induced by the seller's deceit as to the nature or title of the property. We feel it unnecessary at this time to express an opinion on this question in view of our later disposition of the case.

On the other hand, the above-quoted language of the decision is also fairly open to the interpretation that the

trial justice decided for the defendant because he found that the plaintiff failed entirely to prove either a sale or a breach of warranty based upon a sale, which were the specific and sole grounds alleged and relied upon in the declaration; but instead proved only a pledge for a loan to pay partnership debts. If this accurately represents the reasoning and conclusion of the trial justice, there obviously would be no occasion to consider or to apply any rule of damages in this case.

In his decision the trial justice found that the plaintiff had loaned $450 to the defendant on the security of a pledge of the cabinets, but he made no specific finding as to whether the loan was induced by deceit on the part of the defendant. Moreover, while the writ was for deceit, it is not at all clear from the declaration and the evidence whether the case was really tried on the basis of false representations or breach of covenants. Besides those already mentioned, other matters, including the evidence which showed that the instrument alleged in the declaration was only one of a series of agreements, the main object of which was to increase the sale of the plaintiff's products, and including the fact that neither in its declaration nor in its proof did the plaintiff expressly state that it believed and acted in reliance upon the defendant's representations, make us uncertain as to what considerations finally influenced the trial justice. He may also have been influenced by the apparent variance between the proof and the declaration; or he may have felt that under all the circumstances disclosed by the testimony it was not shown that the plaintiff was in fact deceived; or that the plaintiff had otherwise failed to prove its case by a fair preponderance of the credible evidence; or that, even if the plaintiff had been deceived, it had failed to prove any damage of which the deceit was the proximate cause.

We do not deem it advisable in this action at law to make any final determination of the rights of these parties from so ambiguous a record. The question of error, if any, may be

differently determined according to the ground adopted by the trial justice as the basis of his decision, and we are not satisfied as to what ground he adopted. In our opinion, justice requires that the case be retried.

The plaintiff's exception is sustained and the case is remitted to the superior court for a new trial.

Moss, J. While I agree with the conclusion of the majority of the court that there should be a new trial of this case, I feel that this conclusion should be based upon a different and more definite ground. The writ describes the action as one for deceit and, so far as appears from the record, neither the defendant nor the trial justice raised any question as to the form of the declaration or any question of a variance between the declaration and the proof. Both of the parties and the trial justice were evidently willing that the case be decided on the issue whether the evidence showed that the plaintiff had suffered damage as the legal consequence of a deceit practiced upon it by the defendant by means of a false warranty that he was the lawful owner of the cabinets.

In his decision, as quoted in full in the opinion of the court, the trial justice found only two basic facts, on which alone, in my judgment, he clearly based his decision for the defendant. These facts were (1) that the defendant "pledged that property," in other words that the material transaction between the parties as to the cabinets was really a pledge of them by the defendant to the plaintiff and not a sale; and (2) that the pledge was made "to get money to pay the debts of this partnership," i. e., as security for a loan for partnership purposes. He then ruled that under the law, i. e., the law of partnership, the defendant had the right to do this, meaning that he had the right and power thus to pledge the cabinets for partnership purposes, even without the knowledge or consent of his copartner. The trial justice then found, in substance, that the pledgee was not bound to see to the application of the money loaned. He then announced his decision for the defendant.

To my mind it is clear that he reached this decision solely on the basis of the previous findings of fact and law which he had made. Why else should he have made them and mentioned no others? To my mind it is clear also that his intervening reasoning must have been that the pledge was valid, and enforceable by the plaintiff against the partnership; and that therefore the plaintiff had suffered no damage by reason of the defendant's conduct, having received in substance just what it would have received, if the defendant alone had owned the cabinets, namely, a valid pledge of them as security for the repayment of the $450 loaned by it to him.

Without expressing any opinion as to what the trial justice *should* have found from the evidence, I am of the opinion that there was evidence from which he *could* properly have found that the defendant had practiced deceit upon the plaintiff by asserting that he owned the cabinets and supporting that assertion by procuring from the Landy Ice Cream Company the receipted bill for the cabinets and having it made out to him personally, although the sale had been made to the partnership and was so shown on the books of the Landy Ice Cream Company. In my judgment there was also evidence from which the trial justice *could* properly have found that such deceit, if found, was a material part of the inducement which caused the plaintiff to make the loan, and that the other necessary elements of actionable deceit, aside from damage, were present.

That the trial justice made no finding either way on any of these other necessary elements of a cause of action for deceit, and yet made a decision for the defendant on the above findings of fact and law, convinces me that he rested that decision solely on the ground of the absence of the final necessary element of such a cause of action, namely, some damage to the plaintiff as the legal result of the defendant's conduct. The evidence showed an actual loss to the plaintiff of $300 by reason of having made the loan. As I view the matter, the trial justice, by reason of the above findings,

decided that, even if all the other elements of a good action of deceit were present, the above actual loss was not recoverable, because the plaintiff was legally in no worse position after the loan transaction was completed than he would have been in, if the defendant's statement that he was the owner of the cabinets had been correct.

But this reasoning and conclusion involved the application to this case, of a rule of damages which has been applied, by the highest courts of most of the states, though rejected by the courts of other states and by the supreme court of the United States, to cases of *purchases of property*, when induced by the seller's deceit as to the nature of the property or as to his title thereto. That rule is that the measure of damages to the purchaser is the amount by which the value of what he actually received in the transaction fell below the value of what he would have received if the facts had been as stated to him by the seller.

But the established rule is quite different in cases of *loans* on the security of property pledged, where the loans have been procured by deceit on the part of the borrower. In cases of the latter kind the correct rule is the one stated in 2 Sedgwick on Damages, (9th ed.), § 439, as to actions for deceit not involving sales: "The damages recoverable are those which naturally flow from the fraud. Here as in other cases of torts the rule of compensation is to put the party defrauded back into the condition in which he was before the wrong was done. Hence, in case of false representations, relied on by the plaintiff to his detriment, the measure of recovery is not the difference between the plaintiff's pecuniary condition if the representations had been true and his condition under the actual facts, but rather the difference between what the plaintiff had before he acted on the representation and what he had afterward. This represents his actual loss. The action is for the recovery of pecuniary damages."

In *Phillips* v. *Hebden*, 28 R. I. 1, 65 A. 266, cited with approval in the case of *Robinson* v. *Standard Stores, Inc.*, 52

R. I. 271, 160 A. 471, the action was in tort for damages for false representations as to the defendant's ownership of certain property, made as a basis for credit to be extended to him by the plaintiff, and it was held that the measure of damages was the loss, if any, actually sustained by the plaintiff by reason of his reliance on these false representations. At page 2 of the official report this court says: "The defendant takes nothing by his exception to the refusal to charge the jury that 'the measure of damages at the most must be what the plaintiff could have gotten out of that property if it had belonged to the defendant, instead of to his wife.' The measure of the defendant's liability, in a case of this kind, is the loss, if any actually sustained by the plaintiff by reason of his reliance upon the alleged false representations of the defendant." See also *Horne* v. *Walton*, 117 Ill. 130, 7 N. E. 100, and *Horne* v. *Walton*, 117 Ill. 141, 7 N. E. 103. ·

Applying to the instant case this correct rule of damages for cases of loans of money induced by deceitful representations of the borrower, I am of the opinion that the plaintiff, having lost $300 as a legal and proximate result of making the loan if the compromise settlements which it made of its actions against Greenwood and the Landy Ice Cream Company were justified, would have the right to recover that loss from the defendant, if deceit by the defendant as to his title to the cabinets was a material part of the inducement to the plaintiff for making the loan to him and the other necessary elements of actionable deceit were present. I am also of the opinion that this would be so, even if the plaintiff received from the defendant a pledgee's interest in the cabinets which was legally enforceable against his partner and partnership creditors.

Believing as I do that the trial justice reached his decision for the defendant by applying an incorrect rule of damages to the admitted facts of the case and the two facts which he expressly found, and thus committed an error of law, I have come to the conclusion that his decision should be

set aside and a new trial ordered because of that error, rather than for the reasons given in the opinion of the court. The question herein discussed seems to me so clearly presented to us that it ought to be decided and that the trial justice, in case of a new trial, should not be left without guidance from this court on that question.

*Goldberg & Goldberg*, for plaintiff.

*Morris Berick*, for defendant.